# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM TIERNO,** | **:** |
| **Petitioner** | **:** |
| | **CIVIL ACTION NO. 3:14-1157** |
| **v.** | **:** |
| | **(Judge Mannion)[1]** |
| **Superintendent,** | **:** |
| **SCI-Smithfield** | |
| | **:** |
| **Respondent** | |

## MEMORANDUM

Petitioner, William Tierno, filed the instant petition for writ of habeas corpus pursuant to to 28 U.S.C. §2254. He attacks a conviction imposed by the Court of Common Pleas for Schuylkill County, Pennsylvania. (Doc. 1). Following careful consideration of the parties' submissions, and for the reasons discussed below, the Court will deny the petition for writ of habeas corpus.

## I.    Background

The following background has been extracted from the Pennsylvania Superior Court's May 24, 2013 Opinion, affirming the dismissal of Petitioner's first Post Conviction Relief Act ("PCRA") petition. (Doc. 25-1 at 189, Opinion

---

[1]This case was originally before the Hon. Wm. J. Nealon. It was reassigned to the undersigned on August 30, 2018.

dated May 24, 2013).

The PCRA court summarized the relevant facts and testimony presented at the March 29, 2012 PCRA hearing as follows:

> [Appellant] has an extensive criminal history of approximately 13 different cases, beginning with a burglary of an occupied building in 1980 in Philadelphia. On August 30, 2010, [Appellant] pled guilty and was sentenced in two separate new incidents, namely, No. 866-09, which involved charges of felony conspiracy and robbery, felony robbery and a misdemeanor theft by unlawful taking and receiving stolen property; and No. 1290-09, which involved charges of felony conspiracy and robbery and a misdemeanor for theft by unlawful taking and terroristic threats. In No. 866-09, [Appellant] was represented by the Public Defender's office, Attorney Tim Pellish ("Pellish"), and in No. 1290-09, he was represented by private counsel, Attorney James Conville ("Conville"), who was appointed by [the trial court's] President Judge due to a possible conflict of interest in that case with the public defender's office also representing hi[s] co-defendant. The guilty plea paperwork indicates [Appellant] faced a mandatory sentence of 25 years to life, pursuant to 42 Pa.C.S.[A.] § 9714, because it was his third felony or third "strike". The plea bargain reached caused [Appellant] to be sentenced [on August 30, 2010] to a total sentence of 12 to 24 years['] incarceration at a state correctional facility, after the Commonwealth reduced the grading of the felonies charged from a level 1 to a level 3 as part of a plea bargain on the two cases.

> [Appellant] filed a timely pot-sentence motion and then appealed its denial to the Pennsylvania Superior Court, which dismissed his appeal for failure to file a brief in December 29, 2011.

2

On February 5, 2012, [Appellant] filed a timely PCRA petition[2] in which he asserts that his two attorneys were ineffective because both misinformed him of the maximum sentence that could be imposed if he went to trial, as did the Commonwealth, which contributed to his decision to plead guilty. He also states that he was given improper instructions by a government official about his right to an appeal. [Appellant] requested to proceed *pro se*. [Appellant] seeks to be allowed to withdraw his guilty plea and proceed to trial. [The PCRA court] appointed the Pubic Defender's office to represent [Appellant] by Order dated February 16, 2012.

On March 1, 2012, [Appellant] requested that the upcoming hearing be held by way of video conference. [The PCRA court] granted this request on March 7, 2012.

On March 8, 2012, [Appellant], acting *pro se*, filed an amended PCRA petition including a citation to 42 Pa.C.S.[A.] §9714(a)(2) in his claim of ineffective assistance of counsel. [Appellant] again requested a hearing, although one was already scheduled.

[The PCRA court] held a hearing on March 29, 2012. At that hearing, [Appellant] was represented by Attorney Michael Stine of the Public Defender's office. At the very beginning of the hearing, [the PCRA court] agreed to consider the amended PCRA petition even though it was filed *pro se*, and requested that [Appellant] file all further papers through his counsel, to which [Appellant] agreed. [Appellant] explained to the [PCRA c]ourt that

---

[2][The PCRA court is] treating this as the original PCRA petition. [Appellant] calls it an amended PCRA petition because [Appellant] believes he first filed a PCRA petition in his direct appeal. [The trial court] treated that so-called PCRA petition as a petition to reinstate his appeal *nunc pro tunc*.

he only filed the paper himself because he did not know that he had been appointed counsel at that point.

During the entire hearing, Attorney Stine represented [Appellant] with no objection by [Appellant]. Both Attorneys Conville and Pellish were called and examined by Attorney Stine on behalf of [Appellant]. Both Conville and Pellish testified that they told [Appellant] that if he was convicted of the charges, he would face 25 years to life imprisonment. Both explained to him that this was the mandatory sentence for a third violent crime. At the time of their conversation, [Appellant] disagreed and told Conville that was not correct. [Appellant] believed that one burglary in Philadelphia involved a home which was unoccupied. Conville then saw documentation from the District Attorney substantiating that the Philadelphia burglary occurred in an occupied home. It was after the District Attorney produced paperwork substantiating the fact that the prior burglary was in an occupied home, that [Appellant] decided to accept the plea offer. Conville testified that the District Attorney also made it very clear that they intended to seek a 25 year to life sentence. Conville also documented the same in a written letter to [Appellant] dated November 16, 2009. Conville stated that the District Attorney offered a 6 to 12 year sentence on his case, which combined with the other case, resulted in an offer of 12 to 24 years, and also reduced the felony from an F1 to an F3 which greatly reduced the standard sentencing guideline range.

On cross-examination, Conville stated that the reduced sentence was not the only reason [Appellant] pled guilty. The Commonwealth had an extremely strong case against [Appellant] which included both written and verbal confessions to the crimes by [Appellant].

After Conville finished testifying, [Appellant] asked for and received a private conference with Attorney Stine.

Attorney Pellish's testimony confirmed that in No. 866-09, [Appellant] had the same question about whether the third strike rule was going to come into play. Pellish reviewed the paperwork the District Attorney had obtained on the earlier burglary, which confirmed that a person was present in the home burglarized by [Appellant]. Pellish relayed this information to [Appellant] and reviewed the sentencing guidelines with him, telling him of the possibility that if he was convicted, he may face a mandatory 25 years to life sentence, which Pellish believed would be the case. Pellish believed that [Appellant] never accepted that he was subject to the third strike rule, and planned to challenge the sentence if he was convicted. Most of their conversations, in fact, centered on whether or not the third strike applied, as opposed to [Appellant]'s guilt or innocence. In this case, in addition to written and verbal confessions given by [Appellant], a victim was able to identify [Appellant].

At the end of Pellish's testimony, [Appellant] again asked for a private conference with Stine, after which Stine asked Pellish a few more questions about the confessions by [Appellant] and [Appellant]'s unsuccessful pre-trial suppression motion, and whether the confessions could still be challenged during a trial. Stine also asked about the strength of the victim's identification of [Appellant].

Stine then called [Appellant] to testify. [Appellant] stated that he disagreed with Conville that he was subject to a mandatory 25 years to life sentence. [Appellant] testified that after a joint visit with both attorneys, he rejected the District Attorney's plea offer and told them to file a suppression motion, which they

did. When the motion was denied, they again visited him and advised him of the prior burglary and proof that a person was present in the home, and advised him to take the plea bargain because he was facing a third strike sentencing. [Appellant] testified that he believed both Conville and Pellish when they said they had seen this paperwork on the prior burglary. [Appellant] stated that he became scared that he was going to spend the rest of his life in jail, because they both advised him of that, but that neither attorney threatened him to take the deal. [Appellant] therefore accepted the District Attorney's offer and pled guilty. [Appellant] disputed that either attorney ever told him that the voluntariness of his confessions could be challenged at trial. [Appellant] also disputed that he was ever told that the testimony of a co-defendant could be challenged as well. Finally, [Appellant] emphasized that he had never personally seen the documentation provided by the District Attorney regarding the prior burglary.

PCRA Court Opinion, 8/3/12, at 1-6 (footnote in original).

On June 14, 2012, the PCRA court held a second evidentiary hearing during which the Commonwealth introduced certified records of Appellant's burglary convictions, indicating that individuals were present in the homes at the time of each crime. **See** N.T. 6/14/12 at 3, 5, 11. During this hearing, Appellant indicated via videoconference that he wished to represent himself. **Id**. at 6. On June 21, 2012, while still represented by Attorney Stine, Appellant filed a *pro se* "Motion for Leave to File Supplemental Amended PCRA Petition." That same day, Appellant filed a 17-page handwritten *pro se* "Third Request to Waive Counsel and Proceed *Pro Se*." on July 27, 2012, Appellant filed a *pro se* "PCRA Petitioner/With Amended PCRA Petition."

As noted, the PCRA court entered an order dismissing Appellant's initial PCRA petition, as well as his amended and supplemental petitions, on August 3, 2012. **See** PCRA Court Order, 8/3/12, at 1-

2, ¶1. A subsequent motion to withdraw filed by Attorney Stine was also granted by the PCRA court on August 3, 2012. On August 12, 2012, Appellant filed a timely *pro se* notice of appeal.[3] Thereafter, Appellant retained private counsel, Jerome M. Brown, Esquire (Attorney Brown), who entered his appearance on September 25, 2012.[ ] (footnote omitted).

On appeal, Appellant raises the following issues for our review:

1.     Did the [PCRA c]ourt err in finding that Appellant's trial [c]ounsel were not ineffective when the [PCRA c]ourt's decision was based upon the fact that they provided appropriate advice as to whether Appellant was a third-strike offender when it is clear from the case law that he was only a second-strike offender?

2.     Did the [PCRA c]ourt err in not permitting Appellant to present his claim that the Commonwealth had presented perjured testimony during the hearing on the motion to suppress his statements when Appellant asserted in his PCRA Motion that the statement had been unlawfully induced by a promise of concurrent sentencing and there was evidence that such a promise had been made?

Appellant's Brief at 2.

Id.  By Memorandum Opinion dated May 24, 2013, the Superior Court affirmed

the PCRA court's dismissal of Tierno's petition.  Id.

Tierno filed a timely allowance of appeal to the Pennsylvania Supreme

_____

[3]Although not ordered to do so by the PCRA court, Appellant filed a *pro se* statement of errors complained of an appeal, in accordance with Pa.R.A.P. 1925(b), on August 28, 2012. The PCRA court, in turn, adopted the opinion it drafted in support of its August 3, 2012 order as its Rule 1925(a) opinion.

Court, in which he raised the following issues for review:

> 1.    Did the PCRA Court err in finding that Petitioner's trial counsel were not ineffective when that Court decided they provided appropriate advice as to whether Appellant was a third-strike offender when it is clear from case law that he was only a second-strike offender?
>
> 2.    Did the lower Court err in not permitting Petitioner to present his claim that the Commonwealth had presented perjured testimony during the hearing on the motion to suppress his statements when Petitioner asserted in his PCRA motion that the statement had been unlawfully induced by a promise of concurrent sentencing in two counties, and there was evidence that such a promise had been made and kept?

(Doc. 25-1 at 251).

On January 16, 2014, the Pennsylvania Supreme Court denied Tierno's petition for allowance of appeal. (Doc. 25-1 at 297).

On June 17, 2014, Petitioner filed the instant petition for writ of habeas corpus in which he raises the following grounds for relief:

> 1.    Whether guilty plea counsel were ineffective for advising Petitioner was a third strike offender under 42 Pa.C.S.A. §9714(a)(2), where Petitioner was never sentenced as a second strike offender under provisions of 42 Pa.C.S.A. §9714(a)(1).
>
> 2.    Violation of Due Process when the PCRA court denied Petitioner the opportunity to be heard on police testifying falsely at suppression hearing.

(Doc. 1, petition).

In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999) and Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Tierno that he could either have the petition ruled on as filed, that is, as a §2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition, absent certification by the court of appeal, or withdraw his petition and file one all-inclusive §2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act ("AEDPA"). (Doc. 4).

In response to this Court's Miller/Mason Order, on August 5, 2014, Petitioner filed a motion to stay the above captioned action pending the Pennsylvania Supreme Court's decision in Commonwealth v. Armstrong 83, A.3d. 411 (Pa. 2014), which Petitioner believed has direct relevance to the challenges to his August 2010 conviction and sentence. (Doc. 8). By Order dated October 21, 2014, Petitioner's action was stayed pending the decision in Commonwealth v. Armstrong 83, A.3d. 411 (Pa. 2014). (Doc. 9).

On April 3, 2015, Petitioner filed a motion to lift the Court's stay (Doc. 10), along with a Memorandum of Law, (Doc. 18), raising the following grounds for relief:

1.  Whether guilty plea counsel were ineffective for advising that petitioner was a third-strike offender under 42 Pa.C.S.A. §9714(a)(2), where Petitioner was never sentenced as a second-strike offender under the provisions of 42 Pa.C.S.A. §9714(a)(1).

2.  Whether the guilty plea was involuntarily, unknowingly, and unintelligently entered?

(Doc. 18 at 4).

By Order dated April 17, 2015, the stay was lifted, Petitioner's action was reopened and the Respondent was directed to file a response to the petition. (Doc. 21). A response (Doc. 25) and traverse (Doc. 33) were then filed.

On October 9, 2015, Petitioner filed an amended petition for writ of habeas corpus, in which he seeks to raise only the following grounds for relief:

1.  Trial counsel was ineffective for misadvising Petitioner he was subject to 25 years to life in prison under Pennsylvania's three-strike law where counsel failed to investigate whether 1993 burglary conviction was a strike in light of Petitioner never serving the sentence for said conviction.

2.  Post conviction counsel was also ineffective for failing to raise and/or defaulting the above ineffective assistance claim.

(Doc. 37). Respondent was then directed to file a response to the amended petition. (Doc. 38). A response (Doc. 41) and traverse (Doc. 43) having been filed, the petition is ripe for disposition.

## II.  **Standards of Review**

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A. **Exhaustion**

It is well-established that a federal court may not entertain the merits of a petition for writ of habeas corpus unless available state court remedies have been exhausted. 28 U.S.C. §2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).[4] Because the exhaustion doctrine is designed to give the state

---

[3]Exhaustion is excused if "there is an absence of available State corrective process[,] or ... circumstances exist that render such process ineffective to protect the rights of the applicant." Lines v. Larkins, 208 F.3d 153, 163 (3d Cir. 2000), quoting 28 U.S.C. §2254(b)(1)(B)(i) and (ii). Hence, "exhaustion is not required if there is inordinate delay in state procedures, id. at 250, or if state officials have obstructed the petitioner's attempts to obtain state remedies." Id.

courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must invoke one complete round of the state's established appellate review process. Id. at 845. The habeas corpus petitioner shoulders the burden of establishing exhaustion of state court remedies. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing Lambert v. Blackwell, 134 F.3d 506, 513 (3d. Cir. 1997). The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state courts. Picard v. Connor, 404 U.S. 270, 275 (1971). "All claims that a petitioner in state custody attempts to present to a federal court for habeas review must have been fairly presented to each level of the state courts." Lines, 208 F.3d at 159. See also Baldwin v. Reese, 541 U.S. 27 (2004)(holding that "to provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."). The Court finds that Petitioner's issues raised in the instant petition to be exhausted.

**B. Merits**

---

at 163, citing Mayberry v. Petsock, 821 F.2d 179 (3d Cir. 1987).

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. §2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only

rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in §2254(e)(1) applies to factual issues, whereas the unreasonable application standard of §2254(d)(2) applies to factual decisions) Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction."

14

Breighner v. Chesney, 301 F. Supp 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. §2254(d)(2) and (f)[5]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Porter, 276 F. Supp 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp 2d at 296; see also Williams, 529 U.S. at 408-09.

**C.    Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Id. at 687; accord Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir.1994).

---

[4] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. §2254(f).

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; accord Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; accord Jermyn, 266 F.3d at 282; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996). If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, Strickland, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." United States v. Wiener, 127 F. Supp.2d 645, 648 (M.D. Pa. 2001). A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel. See Burger v. Kemp, 483 U.S. 776, 794 (1987). It follows that counsel cannot be deemed ineffective for pursuing a meritless claim. Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and shows prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466

U.S. at 694; accord Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir.1992) "Without proof of both deficient performance and prejudice to the defense ... it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002)(internal quotations and citation omitted). In assessing whether the result of the proceeding might have been different, a reviewing court must consider the "totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695; Jermyn, 266 F.3d at 283. However, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d. Cir. 2006). "The object of an ineffective assistance claim is not to grade counsel's performance. If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

When the Pennsylvania state courts reviewed the claim raised by Tierno, Strickland's familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel

claims, but is, in substance, identical to the Strickland test. See, e.g., Commonwealth v. Johnson, 565 Pa. 51, 771 A.2d 751, 757 (Pa. 2001). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n. 9 (3d Cir. 2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, under §2254(d)(1), the relevant inquiry in addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania state court decision involved an unreasonable application of Strickland. Jacobs, 395 F.3d at 107 n. 9; Werts, 228 F.3d at 204.

Petitioner in this case advances no argument that the Superior Court decision is contrary to existing United States Supreme Court precedent. In this regard, Petitioner does not maintain that the ineffective assistance test applied by the state court is inconsistent with the test established in Strickland and developed in its progeny. Thus, Petitioner's individual assertion of ineffective assistance will be considered against this standard.

Petitioner claims that trial counsel was ineffective for misadvising Petitioner he was subject to 25 years to life in prison under Pennsylvania's three-strike law where counsel failed to investigate whether the 1993 burglary conviction was a strike. In addressing this issue on appeal, the Pennsylvania

Superior Court found as follows:

> In the instant matter, the PCRA court authored a comprehensive opinion that thoroughly analyzed Appellant's ineffectiveness claim and concluded it was devoid of merit. Specifically, the PCRA court stated as follows.
>
> > We find the testimony of Attorneys Conville and Pellish to be credible, in that they both correctly told [Appellant] that the was going to be subject to a three strike mandatory sentence if he was convicted of these charges. [Appellant] had the benefit of two separate attorneys advising him, one from the public defender's office and one a private counsel appointed by [the PCRA c]ourt to avoid a potential conflict of interest with a co-defendant in No. 1290-09. Both told [Appellant] the same thing as far as his exposure to the mandatory sentencing. Both accomplished a reduction in the charges through the plea negotiation process which significantly reduced his actual sentence.
>
> PCRA Court Opinion, 8/3/12, at 10.
>
> Upon careful review of the record, including the parties' respective briefs and the applicable law, and in light of this Court's scope and standard of review, we agree with the PCRA court's determination. This court has long recognized that "counsel cannot be considered ineffective for failing to raise a claim that is without merit." **Rivers, supra**. Instantly, Appellant's trial counsel advised him that he was subject to a mandatory term of 25 years' imprisonment if convicted of a "third-strike", pursuant to 42 Pa.C.S.A. §9714(a)(2). Section 9714(a)(2) provides in relevant part, as follows.
>
> > Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to

19

a minimum of at least 25 years of total confinement....

42 Pa. C.S.A. §9714(a)(2). This statute further notes that the burglary of a structure "adapted for overnight accommodations in which at the time of the offense any person is present[,]" qualifies as a "crime of violence." **See id**. §9714(g); 18 Pa.C.S.A. §3502(a)(1).

Contrary to Appellant's assertion, the law of this Commonwealth does not mandate that a defendant be sentenced to the mandatory term on a second-strike before being sentenced as a third-strike offender, but rather, simply requires that said defendant be convicted of the necessary underlying "crimes of violence" to trigger the application of section 9714(a)(2). **See Commonwealth v. Ford**, 947 A.2d 1251, 1253-1255 (Pa. Super. 2008), *appeal denied*, 959 A.2d 319 (Pa. 2008). Herein, the record contradicts Appellant's assertion that the requirements for a third-strike offender were not established. Specifically, the record reflects that the Commonwealth demonstrated that Appellant had the necessary underlying violent convictions to trigger application of section 9714(a)(2), by introducing certified records of his prior burglary convictions, indicating that individuals were present in the home at the time of each crime. **See** N.T., 6/14/12 at 3, 5, 11.

As such, we conclude that trial counsel's advice to Appellant to accept a plea deal was competent, and thus, his guilty plea was knowing, voluntary and intelligently entered. As the PCRA court further noted in its opinion,

> [d]uring [Appellant's] guilty plea, [Appellant] received a lengthy colloquy from [the trial c]ourt, including extensive dialogue with [the trial] court and his two attorneys, Conville and Pellish. We made the finding at that time that [Appellant's] guilty plea was made knowingly, understandingly and intelligently. [Appellant] knew precisely what he was doing, and what he was

> pleading to[6] and his very experienced trial counsel, who are known to this writer to be experienced and faithful to their obligations, concluded and opined that [Appellant] was wrong in his assertion that he did not know the import of his actions in court at the time of his plea.
>
> PCRA Court Opinion, 8/3/12 at 10-11 (footnote in original). Based on the foregoing, Appellant is not entitled to relief on his ineffectiveness claim.

(Doc. 14-10 at 6-7). The Superior Court's decision does not reflect an unreasonable application of the Strickland test, nor is it an unreasonable application of the facts in light of the evidence presented in state court.

To the extent that Petitioner attempts to rely on the Pennsylvania cases of Commonwealth v. Shiffler, 879 A.2d 185 (Pa. 2005); Commonwealth v. Leverette, 911 A.2d 998 (Pa. Super. 2006); and Commonwealth v. Armstrong, 74 A.3d 228 (Pa. Super. 2013), aff'd, __A.3d__(September 9, 2014), to support his theory that he would not be eligible for the third-strike mandatory minimum, the Court finds all of these cases factually distinguishable from the instant action.

In Commonwealth v. Shiffler, supra, the defendant was sentenced

---

[6][Appellant'] understanding surrounding his potential sentence if convicted and his sentence according to his plea bargain must be considered in light of his decades of experience with the criminal justice system, which began at least 32 years ago in Philadelphia.

pursuant to the third-strike provision of 42 Pa.C.S.A. §9714(a)(2) because he had three prior burglaries. Id. at 187. However, the three burglary convictions were disposed of when the defendant "pleaded guilty to each charge on the same day he was sentenced...concurrently." Id. at 187 n.5. Thus, the Pennsylvania Supreme Court vacated the sentence, holding that, despite having three prior burglaries, the defendant could not be sentenced as a third-strike offender where the defendant "ha[d] not ever been – nor **could** have been – sentenced as a second strike offender". Id. at 194 (emphasis in original).

Similarly, in Commonwealth v. Leverette, supra, the Pennsylvania Superior Court applied Shiffler and held that the defendant could not be sentenced as a third strike offender because, while the defendant did have the requisite two prior burglaries, "the sentencing for both incidents occurred on the same day under the same docket number" Id. at 1002. The Leverette Court cited the Shiffler Court's analysis that "he has not ever been – nor could he have been – sentenced as a second-strike offender". Id. at 1003.

Finally, in Commonwealth v. Armstrong, supra, the crime that would qualify as the requisite third strike was committed before the defendant was convicted and sentenced on his second strike. Id. at 241-42. As such, the

Superior Court found that the third strike provision could not apply because the defendant "had not been convicted or sentenced as a first-strike offender for [the first violent crime] when he was arrested for the [second violent crime]." Id. at 242.

In the instant action, Tierno's counsel testified at Petitioner's PCRA hearing that the District Attorney showed him documentary proof that Petitioner had a prior Robbery conviction and a prior Burglary convictions in which a person was present in a home, qualifying him as a third strike offender. He further testified that based on the fact that Petitioner was facing a minimum of 25 years in prison, and that the evidence against Petitioner was extremely strong, they entered into the agreement that Petitioner was ultimately sentenced under. Thus, unlike the defendants in Shiffler, Leverette and Armstrong, Petitioner had committed his first crime, served his sentence, committed his second crime, served his sentence and then committed his third crime, making him eligible for enhanced punishment as a third strike defendant. As the Pennsylvania Supreme Court noted in Shiffler, Petitioner has indeed "persevered in criminal activity **despite the theoretically beneficial effects of penal discipline**". Shiffler at 195 (emphasis in original), as he has indeed completed the sequence of events in which the Pennsylvania Supreme Court

stated was expected for the imposition fo the third-strike: "first offense, first conviction, first sentencing, second offense, second conviction, second sentencing." Id. at 192. Thus, Petitioner's claim that he did not qualify as a third-strike offender is without merit. Consequently, Tierno cannot show either prong of Strickland, as counsel's advice was not deficient. Petitioner is not entitled to relief on this claim.

Petitioner's next claim that PCRA counsel was ineffective for failing to raise and/or defaulting the ineffective assistance claim regarding counsel's alleged failure to investigate whether Petitioner's 1993 burglary conviction was a strike, is equally without merit. The extensive testimony at Petitioner's March 29, 2012 evidentiary hearing on his PCRA petition revolved around whether Petitioner had sustained two prior convictions that could be considered strikes under 42 Pa. C.S.A. §9714(a)(2), and whether trial counsel properly advised him based on those prior convictions. (See Doc. 25-1 at 54, Notes of Testimony, Evidentiary Hearing, March 29, 2012 at 1-58). This extensive testimony is solidified by a second limited hearing, held solely for the purpose of moving for admission, the certified records from the Philadelphia Clerk of Courts, demonstrating that Petitioner had two prior burglary convictions, in which someone was present in the home at the time of the crime, qualifying the

crime as a crime of violence for purposes of 42 Pa. C.S.A. §9714(a)(2). Thus, it is apparent that PCRA counsel thoroughly explored trial counsels' investigation into Petitioner's prior crimes and Petitioner is not entitled to habeas corpus relief on his second claim.

## III.     **Certificate of Appealability**.

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. §2253(c)). "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was

correct in its procedural ruling." Id.

For the reasons set forth herein, Tierno has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that the procedural rulings are correct, nor would jurists of reason find the Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## IV.    Conclusion

In light of the foregoing, the petition for writ of habeas corpus will be **DENIED**, and the case will be **CLOSED**. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATED:** May 6, 2019
14-1157.01